JOSEPH AGATE *v.* ABRAHAM LOWENBEIN AND ANOTHER.

A tenant, holding under a lease containing a covenant on his part to quit and surrender the premises at the expiration of the term in as good state and condition as reasonable wear and tear would permit, but providing that he should have the right to make any inside alterations he might think proper, provided they did not injure the premises;—removed the partitions on the upper floors of the leased building, so as to use them for lofts instead of apartments for hotel purposes, *Held,* that this was within the privilege granted him by the lease, unless the pecuniary value of the premises as a whole was thereby injured.

Under such a lease, the remedy of the owner for injury occurring to the property during the term, is confined to such unauthorized and unlawful acts in the nature of waste, as necessarily occasion injury to his reversionary interest.

But the fact that the making of such alterations, changes the state and condition, and for the time being impairs the value of the property, is no ground for an action. It is not intended that the comparison of value to determine whether the alterations injure the premises should be made while the alterations are in progress, but when they are completed.

There is no breach of the privilege conferred, if the premises are restored in an equally valuable condition at the end of the term, and until then the landlord cannot maintain an action.

APPEAL by plaintiff from a judgment entered by direction of the court at trial term, dismissing the complaint.

The facts are as follows :

The defendants were the lessees of the premises, 645, and the three upper floors of 647, Broadway, in New York city, holding under a lease whose provisions are stated in the opinion.

The upper floors of the premises had, when the building

was originally built, been used as lofts, but shortly afterwards, and at the time of the making of the lease, and when defendants went into possession, they were partitioned off into rooms. Defendants removed these partitions and used the floors as lofts, whereupon this action was brought.

*C. Bainbridge Smith*, for appellant.

*Lauterbach & Spingarn*, for respondents.

By THE COURT.*—ROBINSON, J.—This was an action commenced in December, 1869, against defendants, as assignees of a lease of premises, No. 645, and the three upper floors of No. 647, Broadway, in the city of New York, executed by plaintiff to Eugene Mendez for ten years from May 1, 1866, of which defendants had become assignees in 1866, for injuries to the premises alleged to have been committed by them in 1869, in removing, tearing down, wasting, and destroying the premises. Defendants justified their acts under a provision in the lease, which, after the usual covenant of the lessee to quit and surrender the premises at the expiration of the term in as good state and condition as reasonable wear and tear would permit (damages by the elements excepted), provided that " the party of the second part (shall) should have the right to make *any inside alterations to said premises as he may think proper, provided they do not injure the premises hereby leased.*"

This demise was a vesting of the property and estate in the tenant for the period of the lease, subject only to the payment of the rent and performance of the covenants. The remedy of the owner for injury occurring to the property during the term was confined to such unauthorized and unlawful acts in the nature of *waste*, as necessarily occasioned injury to his reversionary interest.

In this case the tenant was authorized to make such alterations as he might think proper, subject only to the condition that they did not injure the property. This license was not confined to any single effort or experiment, but might be exer-

---

* Present, DALY, Ch. J., ROBINSON, and J. F. DALY, JJ.

cised at any time during the term. The very commencement of
any such *alteration* of the premises from their then state and con-
dition, necessarily to some extent damaged or destroyed the
existing order of things, and would, without such license, tech-
nically constitute *waste;* it also, for the time being, impaired
the *value* of the property. The construction put upon this lat-
ter provision by the plaintiff, as a condition *precedent,* would
necessarily prevent the undertaking of any *alterations,* and
debar the tenant from any practical benefit from the provision
in question. In my opinion, by its true construction, the con-
tract of the parties justified the acts shown to have been done
by defendants when the suit was commenced. The character
of the alterations to be made were left to the discretion of the
lessee, and might have involved entire and radical changes in
the internal plan of the building; in the partitions and stair-
ways as well as in many other particulars. It was not intended
that such comparison of value as is referred to should be made
*in the progress,* but *at the end* of the alterations, and while any
such design of the tenant was prosecuted in good faith, he was act-
ing within the scope of the lease, subject only to the " condition
subsequent" that such alterations when completed should not
" injure (the pecuniary value of) the premises." He was not sub-
ject to the obligation of a tenant to keep the premises in repair,
who is thereby bound to maintain them continually in such
good condition, and for breach the landlord may presently and
during the tenancy have his action (*Scheffelin* v. *Carpenter,* 16
Wend. 409). In the latter case the right in the landlord is to
*the maintenance of the freehold* in a particular condition; in
the present case the right is one conferred upon the tenant,
allowing him to alter the premises at discretion; and is one
continuing during the tenancy. There is no breach of the
privilege conferred, even if such alterations continue in progress
during the entire term, provided the premises be restored in an
equally valuable condition as when hired. It was for the in-
terest of the lessee as well as of the lessor, that such alterations
should enhance the value of the premises, but the test as to
their relative state, or condition, either in view of their pro-
ductiveness or market value, so far as affecting the *reversionary*

*interest,* to which this contract solely relates, must be left for solution until it *legally* come to the reversioner (1 Wash. on Real Prop. 3 ed. 132–3.) Till then the tenant has a *locus pœnitentiæ* to alter and reinstate them in their original valuable condition, and for this reason the landlord in the present case had no cause for complaint for any dilapidation occurring in 1869 in the course of the *alterations* then made by the tenant, nor for any breach of the condition subsequent, that such alterations should not injure the premises, until the termination of the lease. This suit was, however, brought before the termination of the tenancy, and being premature, no .damages were recoverable.

For this reason I am of opinion the plaintiff on the trial showed no cause of action, and the nonsuit was properly granted. The judgment should be affirmed.

Judgment affirmed.